UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

Z.S., by his parent A.C., and all persons similarly situated,

          Plaintiff,

          v.

NEW YORK CITY DEPARTMENT OF EDUCATION and KAMAR H. SAMUELS, in his official capacity as Chancellor of the New York City Department of Education,

          Defendants.

Case No. 1:26-cv-04607

**CLASS ACTION COMPLAINT**

---

Z.S., by his parent A.C., on behalf of himself and a putative class of similarly situated persons, by and through his attorneys, New York Lawyers for the Public Interest, and Paul, Weiss, Rifkind, Wharton & Garrison LLP, alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This civil rights class action lawsuit challenges the systemic failure of the New York City Department of Education (the "DOE") to meaningfully investigate and respond to allegations of abuse by teachers and staff against students with disabilities. Plaintiff is a student with disabilities who attends District 75, a specialized district of the New York City School District that provides educational environments for nearly 26,000 students with behavioral, emotional, or intellectual disabilities within the meaning of the Americans with Disabilities Act (the "ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the New York City Human Rights Law (the "NYCHRL"). Plaintiff reported abuse by a DOE teacher or other employee and through such reporting the DOE was notified of abuse inflicted by its employees. In Plaintiff's case and in the cases of other District 75 students, the DOE either failed to investigate the allegations at all or conducted an investigation that was flawed, deficient, and subject to lengthy delays. The failure

by the DOE to investigate abuse by employees disproportionately affects District 75 students and Plaintiff in this action seeks to improve school safety for all District 75 students through fundamental changes in the way that the DOE investigates allegations of abuse, so that Plaintiff and all District 75 students can access the education to which they are entitled by law.

2. Although Chancellor's Regulations ("CR") A-420 and A-421 (collectively, the "Regulations") codify the DOE's responsibilities related to investigations of "corporal punishment" and "verbal abuse" of students by DOE employees,[1] the DOE and its agents and employees have denied District 75 students access to such benefits by failing to meet basic obligations under the Regulations.

3. While the DOE updated and improved the Regulations in June 2025, these revisions do not provide Plaintiff with the full scope of relief Plaintiff seeks in this action.

4. These acts and omissions by the DOE, especially in the face of clear evidence of a systemic problem, reveal a custom and practice of deliberate indifference and gross misjudgment in investigating allegations of corporal punishment and/or verbal abuse by DOE staff, creating a culture of deliberate indifference to the abuse against Plaintiff and other District 75 students.

5. This deliberate indifference has a disparate impact on District 75 students, an already vulnerable population. District 75 students face significant barriers to accessing education, are often subject to excessive punishment because of their disabilities, and are often less willing or less able to communicate incidents of abuse.

6. Plaintiff has suffered the direct results of the DOE's failure to adequately investigate claims of abuse against District 75 students. In 2015, Z.S., then in sixth grade, after

---

[1] *See* N.Y.C. Dep't of Educ., Regulation of the Chancellor A-420 (June 20, 2025); Regulation of the Chancellor A-421 (June 20, 2025).

2

having issues with some DOE employees since at least the second grade, was grabbed and shoved and had his arm twisted by a DOE paraprofessional, which caused bruises and trauma to his face.

7. DOE officials failed to report the abuse sustained promptly or at all. When an investigation was conducted after Plaintiff's parents reported some of the conduct described above, Plaintiff's educational experiences were undermined, as the investigation never accommodated Plaintiff's needs. Additionally, the DOE failed to inform Plaintiff's parents of the status of any investigation, even after being requested to do so. Despite the complaints of abuse, Plaintiff knows of no measures taken by the DOE at any point to protect Plaintiff and/or other students from the accused employees while the investigation was pending.

8. The day-to-day exposure to the individual who was identified as Plaintiff's abuser was detrimental to Plaintiff's mental and physical health as well as his education. The DOE staff member who was accused of abusing Plaintiff had regular contact with and was in a position of authority over Plaintiff.

9. Through its discriminatory practices and deliberate indifference, the DOE has violated the civil and constitutional rights of District 75 students. These violations deprive students with significant disabilities—entrusted by their parents and guardians to the care of the DOE every day—of access to the DOE's benefits and services, their right to an education, and to equal treatment under the law.

10. Plaintiff is an adult who has disabilities such that Plaintiff is a student in District 75.

11. Plaintiff lacks the capacity to file this lawsuit independently due to Plaintiff's disabilities and, therefore, Plaintiff is represented by a parent, A.C., who is a "like fiduciary" pursuant to Rule 17(c)(1)(D) of the Federal Rules of Civil Procedure. Plaintiff's counsel does not believe that any additional steps are necessary to proceed in this manner, but counsel is prepared

3

to file a motion requesting that the Court appoint A.C. as Z.S.'s guardian ad litem if the Court deems it necessary.

12. Plaintiff, along with four other then-District 75 students, originally filed a proposed complaint on April 16, 2018 in *John Doe #1, et al.* v. *New York City Department of Education*, in conjunction with their motion to intervene in that action, No. 16-cv-1684 (NGG)(RLM) (E.D.N.Y.), ECF Nos. 77-1, 75. Shortly thereafter, the proposed intervenors moved to withdraw their motion to intervene on May 9, 2018 pursuant to an agreement "to amend the Proposed Stipulation and Order" in *John Doe #1* "in order to preserve [the proposed intervenors'] class-wide claims." The May 9, 2018 withdrawal motion was so ordered by the Court on May 11, 2018, No. 16-cv-1684 (E.D.N.Y.), ECF Nos. 86, 87.

13. In May 2018, prior to moving to withdraw their motion to intervene in *John Doe #1*, the proposed intervenors and the DOE agreed to toll the statute of limitations applicable to any claims identified in the proposed intervenors' proposed complaint in *John Doe #1* and any claims related thereto. Since the initial May 8, 2018 tolling agreement, the parties in this action have continuously agreed to extend the tolling period and the latest of these executed agreements extended the tolling period to August 4, 2026.

14. Z.S. and A.C., although known to Defendants, are not expressly named by their given names in this complaint because of the privacy guarantees provided in the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*., as well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. § 99. Upon the request of the Court, Plaintiff is prepared to disclose such information on an in-camera basis.

15. Plaintiff sues on behalf of himself and a class of similarly situated individuals for violations of the ADA, 42 U.S.C. § 12131 *et seq*., Section 504, 29 U.S.C. § 794, and the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq*.

## JURISDICTION AND VENUE

16. The Court has jurisdiction under 28 U.S.C. § 1331, in that claims are asserted under the laws of the United States, and 28 U.S.C. § 1343(a), in that claims are asserted under laws providing for the protection of civil rights.

17. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims against Defendant DOE under the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, because they are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

18. Venue is proper in the United States District Court for the Eastern District of New York under 28 U.S.C. § 1391(b) because the DOE operates in the District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District.

## PARTIES

19. Plaintiff Z.S. is a nineteen-year-old person with autism who attends a District 75 school. According to his mother, Z.S. has had negative interactions with DOE staff, including acts constituting verbal abuse, since at least his time in second grade in 2013. In 2017, when he was in the sixth grade, Z.S. told his mother that a DOE employee grabbed and twisted his arm and shoved him into a wall, causing bruising and trauma to his arms and face. Z.S. is a person with a disability within the meaning of the ADA, Section 504, and the NYCHRL.

20. Defendant DOE, formally known as the City School District of the City of New York, pursuant to New York Education Law § 2590-b(1)(a), is responsible for developing policies with respect to the administration and operation of the public school program in New York City. Defendant DOE is a "public entity" within the meaning of the ADA. *See* 42 U.S.C. § 12131(1). Defendant DOE is a recipient of federal financial assistance to operate its school system and

services within the meaning of Section 504. *See* 29 U.S.C. § 794(a). Defendant DOE is a provider of public accommodation under the NYCHRL. *See* N.Y.C. Admin. Code § 8–102.

21. Defendant Kamar H. Samuels is the Chancellor of the DOE and is responsible for its operations.

## BACKGROUND

### A. District 75 Schools

22. District 75 is a specialized district of the New York City School District committed to educating students with disabilities. These students may have autism or other speech, language, intellectual, or learning disabilities. Of the over 900,000 students enrolled in the DOE during the 2024–2025 school year, nearly 26,000 students—or almost 2.9 percent—were enrolled in District 75.

23. As a citywide district, District 75 has schools located throughout all five boroughs in New York City—the Bronx, Brooklyn, Queens, Manhattan, and Staten Island. Many District 75 schools are "co-located" with other district schools, meaning that the District 75 classroom or school may be located within a general education, geographic district school.[2]

24. DOE leadership, responsible for overseeing District 75, includes the Superintendent of District 75, the Deputy Chancellor of the Division of Inclusive and Accessible Learning, and the Chancellor of the DOE.

25. District 75 provides educational settings based on the needs of each student, including classrooms with a low ratio of students to DOE employees. DOE employees in District 75 classrooms include both special education teachers and paraprofessionals. Paraprofessionals are teaching assistants who assist students under the general supervision of a

---

[2] *See, e.g.*, N.Y.C. Dep't of Educ., *District 75*, https://www.schools.nyc.gov/special-education/school-settings/district-75.

certified teacher. Paraprofessionals in District 75 may serve a classroom generally or provide extra services for a specific student; the latter are referred to as "1:1 paraprofessionals."

26. Because District 75 is a city-wide district, students from the same District 75 school often live far from their school and from one another. This geographic dispersal can complicate effective communication concerning school-related issues—including about abusive DOE employees—among students' families. As a result, parents of District 75 students are much more reliant on the DOE's proper handling of incidents involving their children, making the investigative process all the more important for District 75 students and their parents.

27. The DOE has systematically failed, however, to adequately accommodate and investigate allegations of abuse perpetrated against vulnerable District 75 students. For example, Plaintiff's counsel is aware that, on or about September 9, 2015, a then-District 75 student and his mother visited his District 75 school and met with the principal and staff for the first day of school. During the visit, a paraprofessional pointed to the student and commented, "[T]hat's going to be the teacher's kid." That same day, the student came home from the school with a bite mark on his shoulder and bruises and scratches on his back and upper arm. The student told his mother that a teacher had injured him. His mother pressed him, asking "Are you sure?" and she inquired about other students in the student's class to determine whether another student had actually hurt him. The student continued to say that the teacher had hurt him. The following day, the student's parents took him to meet with the school principal and his teacher to report his injuries. When the student saw his teacher, he pointed to the teacher and told his parents that the teacher had hurt him. At the urging of the student's parents, the school filed a complaint with the Office of Special Investigations ("OSI"), the DOE's internal unit responsible for investigating allegations of improper and unlawful behavior, including corporal punishment and verbal abuse against students. However, notwithstanding the fact that the student identified the perpetrator as his teacher, the

7

school advised OSI that the subject of the investigation was "unknown." The student's parents were left in the dark from that point on; they heard nothing about the supposed OSI investigation into their son's injury. To the best of the student's mother's knowledge, neither OSI nor the school took any action to protect her son or other students from the individual he identified as the abuser. Out of fear for his safety, the student's parents transferred him to a nearby, affiliated District 75 school. Less than a month later, on or about October 15, 2015, another DOE employee injured the student at his new District 75 school, causing a hematoma on the student's head. When his mother saw the injury after school, she immediately took her son to the emergency room. At the hospital, the student told the treating nurse and his mother that a teacher had hit him on the head. The hospital reported the incident to the police. The police in turn filed a complaint with the Special Commissioner of Investigation for the New York City School District ("SCI"), an agency independent from the DOE. SCI then identified two subjects in their report: the student's teacher and the student's paraprofessional at his new school. The student's mother filed a complaint with the student's new school, which reported it to OSI. Once again, the school's report specifically, and without explanation, omitted the identities of the individuals who were identified as the perpetrators. And once again, to the best of the student's mother's knowledge, neither OSI nor the school where the student was injured took any action to protect him or the other students from the accused DOE staff. The DOE gave no information to the student's parents about any of the investigations into the student's injuries. Neither OSI nor the schools conducted an interview with the student as part of their investigations. The student's mother repeatedly called his school administrators but no one gave her any information. The student's mother only learned that OSI had ultimately determined the allegations of abuse to be unsubstantiated when she obtained records following a request by counsel. The student's mother was never informed of how the SCI investigations concluded. Again, out of fear for her child's safety, his mother kept him out of

school after he was injured the second time. The student was subsequently enrolled in yet another District 75 school, his third. Upon information and belief, the DOE employees who were suspected of having injured the student remain in their same positions at the student's prior schools, and continue to have contact with District 75 students.

28. Plaintiff's counsel is also aware of an incident in January 2016 where a paraprofessional approached a then-District 75 student from behind with a baton-like object and repeatedly struck him. The abuse was captured on video, which shows the then-District 75 student cowering and covering his face in fear while another DOE employee observes the incident but does nothing. Although the student's mother repeatedly sought an investigation of the assault, she never received any indication that such an investigation occurred. Upon information and belief, the paraprofessional who assaulted the student remained employed at the same District 75 school following the incident.

29. Plaintiff's counsel is also aware of another January 2016 incident where a non-verbal District 75 student complained to their mother of "teacher" and "hurting," which accompanied bruises and abrasions on the student's neck and shoulder. The student's doctor documented the student's injuries and advised the student's mother to demand a full investigation. At the insistence of the student's parents, the school reported the incident to OSI. The school, however, refused to disclose the name of the temporary paraprofessional who was with the student when the student was injured. Months later, in November 2016, the student's parents were finally told that the OSI investigation was closed. They were not informed of the outcome, nor even the identities of those present at the time their child was hurt.

30. Plaintiff's counsel is also aware, that, on or about April 4, 2017, while on a school bus returning from a school field trip, a paraprofessional injured a student with autism. The paraprofessional, as witnessed by the student's teacher, wrapped the student's arm around the

9

student's neck and began to choke the student. Later, at home, the student told his brother what had happened and demonstrated how he had been choked. His brother told their mother. The student's mother was not informed by school administrators of the incident. Instead, the student's teacher confided to his mother what had happened. The teacher said that she had reported the incident to the assistant principal. The student's mother contacted the school principal and repeatedly demanded that an incident report be filed, the paraprofessional be kept away from her son, and that she receive additional information about what had happened. The principal told the student's mother that she would not receive any additional information. The student's mother received no assurances about her child's safety at school and he was never interviewed about the abuse. Almost three months later, the student's mother was notified that the allegation of her son's abuse was unsubstantiated. No additional information was provided. The student's mother subsequently contacted OSI, which informed her that the case had been closed. The student's mother later obtained the report of the OSI investigation with the assistance of counsel. The one-page document was heavily redacted, with only a finding of "unsubstantiated" and the signature of the investigator visible at the bottom. The student's mother complained about the inadequacy of the OSI investigation to SCI. Thereafter, in July 2017, the investigator who had signed the OSI report contacted the student's mother. Inexplicably, the investigator told her that the investigation was open and had merely been delayed by the summer recess. At the end of November 2017, the student's mother reached out to the OSI investigator for an update. He never responded. In January 2018, the student's mother obtained, with the assistance of counsel, an additional report on the results of the OSI investigation. The report, which is heavily redacted, states that the student's teacher told the investigator that she did not witness the incident, contradicting what she had previously told the student's mother. The report is dated November 10, 2017—weeks before the student's mother called the OSI investigator for an update, to no avail. Throughout this entire

10

ordeal, the student remained frightened of the paraprofessional who injured him and these feelings, consequently, negatively affected the student' s experiences in school after the incident.

31. Other current and former DOE students have, over the last several years, reported similar failures to investigate abuse in District 75 schools and failures to make accommodations for the students during the investigations, despite well-documented injuries and repeated efforts by parents.[3]

**B.      Legal Framework**

### i.      Public Education in New York State and New York City

32. New York State's Constitution imposes upon the State a duty to "provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." N.Y. Const. art. XI, § 1.

33. Through Article XI Section 1, "the State has obligated itself constitutionally to ensure the availability of a 'sound basic education' to all its children." *Campaign for Fiscal Equity, Inc.* v. *New York*, 100 N.Y.2d 893, 902 (2003).

34. The New York State Education Law guarantees a public education for any person over five and under twenty-one years of age, who lives in New York City and has not received a general education high school diploma. N.Y. Educ. L. § 3202(1).

35. The New York State Constitution and Section 3202 of the New York State Education Law "create a property interest in education protected by the Fourteenth Amendment" of the U.S. Constitution. *See Handberry* v. *Thompson*, 446 F.3d 335, 353 (2d Cir. 2006); *accord*

---

[3]      *See, e.g.*, News 12, *Exclusive: Mother calls for DOE investigation after son with autism returns from school bruised* (YouTube, Jan. 15, 2023), https://www.youtube.com/watch?app=desktop&v=AJKSFQd7-Lw; Sam Lauren, *A Mother of District 75 Student Fights for Answers After Son's Injury*, Columbia Journalism Sch. (Nov. 28, 2022), https://columbianewsservice.com/2022/11/28/a-mother-of-district-75-student-fights-for-answers-after-sons-injury/.

*D.C. by Conley* v. *Copiague Union Free Sch. Dist.*, 2017 WL 3017189 at *8 (E.D.N.Y. July 11, 2017).

36.     In New York City, children "from 5 to 17 years of age . . . [are] required to attend school on a full-time basis." N.Y.C. Dep't of Educ., Regulation of the Chancellor A-210 (Sept. 28, 2017).

**ii.     The DOE's Current Investigations Framework**

37.     Pursuant to the Dignity for All Students Act, N.Y. Educ. Law §§ 12, 13, the DOE promulgated the Regulations.

38.     CR A-420 addresses "Pupil Behavior and Discipline – Corporal Punishment," while CR A-421 addresses "Pupil Behavior and Discipline – Verbal Abuse."

39.     The Regulations establish the process for the reporting and investigation of allegations of "corporal punishment" and/or "verbal abuse" (as those terms are defined in CR A-420 and CR A-421, respectively) by schools and OSI.

40.     Investigations may also be conducted at the school where the incident occurred ("school-based investigations").

41.     In addition, certain exceptional complaints, including allegations of abuse of a sexual nature, are referred to SCI. CR A-420(IV)(B)(3); CR A-421(IV)(B)(4).

42.     In OSI and school-based investigations, a determination must be made regarding whether a complaint is "substantiated," meaning the investigator found that the allegations were meritorious. CR A-420(VI)(B)(5), A-420(VI)(C)(1); CR A-421(VI)(B)(5), A-421(VI)(C)(1).

43.     If the investigation finds that a complaint is not "substantiated" there is no disciplinary action and there is no means for a student or parent to appeal.

**iii.     Americans with Disabilities Act**

44.     Title II of the ADA forbids discrimination on the basis of disability.

45.     Title II of the ADA also requires reasonable accommodations to be provided to assure that a student with disabilities can participate in, or benefit from, a public entity's services.

46.     Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Students receive the protection of the ADA if they meet a disability standard defined as having a "physical or mental impairment that substantially limits one or more major life activities." *Id.* § 12102(1)(A).  A "public entity" subject to the ADA includes state and local governments, their agencies, and their instrumentalities.  *Id.* § 12131(1).

### iv.     Rehabilitation Act

47.     Under Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Section 504 expressly incorporates, with certain qualifications not applicable here, the ADA's definition of "disability."  *Id.* § 705(20)(B).

### v.     New York City Human Rights Law

48.     The NYCHRL forbids discrimination on the basis of disability by providers of public accommodations.

49.     Under the NYCHRL, it is "an unlawful discriminatory practice for any . . . provider of public accommodation, because of any person's actual or perceived . . . disability . . . , directly or indirectly, to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."  N.Y.C. Admin. Code § 8–107(4)(a).

50. The NYCHRL further requires that any person prohibited by the law from discriminating on the basis of disability shall make "reasonable accommodation[s] to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." *Id.* § 8–107(15)(a).

51. Students receive the protection of the NYCHRL if they meet a disability standard defined as having a "physical, medical, mental, or psychological impairment." *Id.* § 8–102. A "provider of public accommodation" subject to the NYCHRL includes state and local governments, their agencies, and their instrumentalities that provide services, facilities, accommodations, advantages or privileges of any kind that are available to the public. *Id.*

<u>**FACTS REGARDING PLAINTIFF**</u>

52. Z.S. is a nineteen-year-old student with autism who attends a District 75 school.

53. Due to his disabilities, Z.S. has difficulty communicating. He is friendly and outgoing, and likes fruit snacks.

54. According to his mother, Z.S. has had challenges interacting with DOE employees from an early age. In September 2013, on the first day of school in the second grade, his mother witnessed a paraprofessional tell Z.S., "I know who you are." Z.S. had a particularly hard time from the second grade onwards and, according to his mother, began to regress behaviorally.

55. On or about September 18, 2017, Z.S. attended his first day of sixth grade at a District 75 middle school that was new for him. He returned from school that day with bruises on his arms and marks of physical trauma to his face. He told his mother that a school employee, whom Z.S. was able to identify, had hurt him, and he showed his mother how he had been grabbed, twisted around, and pushed into a wall. The school had not notified Z.S.'s mother of any injury or incident.

14

56.     Z.S. was reluctant to talk about what had happened because when he had previously complained about abuse by an after-school counsellor—an allegation that was subsequently substantiated—the perpetrator had accused him of lying.

57.     Z.S.'s mother spoke to school officials, including two assistant principals, and to the person her son said had injured him.  Z.S.'s mother was provided with inconsistent excuses and explanations for how he sustained his injuries.

58.     No one from the school or OSI informed Z.S.'s mother that an abuse report had been filed.  Ultimately, Z.S.'s mother reported the incident to the DOE herself.  An investigator then met with Z.S. at school, without notice to either of Z.S.'s parents.  Afterwards, Z.S.'s mother received a call from the DOE investigator who said that Z.S. could not remember or describe the incident.

59.     Z.S.'s mother has never received written notification of the outcome of any investigation.  However, a four-page OSI investigative report, which was obtained by counsel, shows that on November 1, 2017, OSI determined that the complaint of abuse was unsubstantiated as against the person who was identified as the perpetrator.  Moreover, the report documents that Z.S.'s principal inexplicably failed to report the abuse allegation and instead, unbeknownst to Z.S.'s mother, posted a "Discipline Referral" for *Z.S* to the school's online discipline database, not for the suspected perpetrator.

60.     It is unclear that any remedial actions were taken to assure proper reporting of corporal punishment and/or verbal abuse, per the requirements of the Regulations.

61.     Upon information and belief, the employee who Z.S. identified as having harmed him remained employed at Z.S.'s school and continued to have contact with District 75 students.  Plaintiff knows of no actions taken to protect Z.S. or the other students with whom the individual works.  Z.S.'s mother has received no assurances regarding her son's safety.

62.     Z.S.'s mother fears for Z.S.'s safety and well-being.  She seeks regular assurances that he has not been harmed.

**THE DOE'S EXISTING INVESTIGATIONS PRACTICES**

**A.      Existing Framework for Investigations of Corporal Punishment and Verbal Abuse of Students by DOE Employees**

63.     CR A-420 and CR A-421 prohibit corporal punishment and verbal abuse, respectively, of students by DOE employees.

64.     CR A-420 addresses "Pupil Behavior and Discipline – Corporal Punishment." Corporal punishment is defined as "any act of physical force upon a student for the purpose of punishing that  student." CR A-420(II).  CR A-420 prohibits corporal punishment of students by DOE employees, except in narrow circumstances involving the use of: (1) a "physical escort or brief physical contact and/or redirection to promote student safety, calm or comfort a student, prompt or guide a student when teaching a skill or assisting a student in completing a task, or for other similar purposes" or (2) "[p]hysical restraint to protect oneself or any other person from physical injury where no alternative procedures and methods can be reasonably employed . . . ." CR A-420(II).

65.     CR A-421 addresses "Pupil Behavior and Discipline – Verbal Abuse."  Verbal abuse is defined as

> [L]anguage (written or oral) about or directed toward students that: (1) [b]elittles, embarrasses, or subjects students to ridicule; (2) [h]as or would have the effect of unreasonably and substantially interfering with a student's educational performance or ability to participate in or benefit from an educational program, school-sponsored activity or any other aspect of a student's education; (3) [h]as or would have the effect of unreasonably and substantially interfering with a student's mental, emotional, or physical well-being; (4) [r]easonably causes or would reasonably be expected to cause a student to fear for his/her physical safety; or (5)

[r]easonably causes or would reasonably be expected to cause physical injury or emotional harm to a student."

CR A-421(II)(A).

66. The Regulations require any DOE employee who (1) witnesses corporal punishment or verbal abuse, or (2) has knowledge or information about, or receives a report about, a student who may have been the victim of corporal punishment or verbal abuse, to orally report the incident to the principal (or the principal's designee) within one school day. CR A-420(IV)(A); CR A-421(IV)(A). The DOE employee also must either (1) submit a written report to the principal or designee by completing a witness statement, or (2) file an online report directly with OSI if the allegation is against the principal. CR A-420(IV)(A); CR A-421(IV)(A). Principals or designees must immediately report all incidents and/or allegations of corporal punishment or verbal abuse of students to OSI within one school day of learning of them. CR A-420(IV)(B); CR A-421(IV)(B).

67. When a complaint of abuse has been filed by someone other than the parent of the alleged victim, the principal must notify the parent that a complaint has been filed. CR A-420(IV)(E); CR A-421(IV)(E).

68. Investigations may be conducted either by OSI or by the school at which the incident occurred. CR A-420(VI)(A); CR A-421(VI)(A).[4]

69. The Regulations instruct investigators to interview the alleged victim and any witnesses "as quickly as practicable," but do not require the alleged victim's parents to be present at (or even know about) the interview. *See* CR A-420(VI)(B)(1); CR A-421(VI)(B)(1).

70. CR A-420 and CR A-421 permit interviews with District 75 students without their parents present or without even notifying the parent that the interview is going to take place. CR A-420(VI)(B)(1) n.4; CR A-421 (VI)(B)(1) n.5.

---

[4] In addition, certain exceptional complaints, including allegations of abuse of a sexual nature, are referred to SCI, an agency independent from the DOE. CR A-420(VI)(A)(3); CR A-421(VI)(A)(3).

71. Investigators receive inadequate training on how to interview students with emotional, behavioral, or intellectual disabilities. Therefore, in the current one-on-one setting of interviews, it cannot be ensured that the nature of allegations is thoroughly communicated to investigators by the victims themselves (if they are communicated at all). This is because students with disabilities disproportionately experience difficulties in communicating their allegations to a stranger and communicate most effectively in the presence of and/or with the assistance of someone they know and trust.

72. Similarly, the DOE's policies and practices provide no means for alleged victims of abuse, or their parents, to submit critical evidence, including photographs or medical records, for consideration by investigators.

73. These policies and practices, and the DOE's deliberate indifference to conducting investigations, also wall off parents from the investigation, making it difficult for them to know what information investigators are missing and how to get it to them. This disproportionally impacts District 75 students because District 75 students are more likely to be non-verbal and experience difficulty in communicating. Evidence such as photographs or medical records could help close such information gaps.

74. Although the Regulations require that principals complete school-based investigations within 30 school days of receiving a complaint, CR A-420(VI)(C)(1); CR A-421(VI)(C)(1), the Regulations do not impose any time limit on investigations by OSI. The Regulations also do not provide any mechanism regarding accountability for delayed investigations.

75. Pursuant to the Regulations, OSI is responsible for coordinating with other offices within the DOE and with other entities regarding allegations of physical and/or verbal abuse,

including following up on investigations and disseminating information. CR A-420(IV); CR A-421(IV).

76. The Regulations require OSI to recommend whether the accused employee should be removed from their assignment pending completion of the investigation. CR A-420(V)(A); CR A-421(V)(A). If OSI does not recommend removal initially, the principal may request removal, subject to review by legal counsel. CR A-420(V); CR A-421(V). Either way, however, the decision of whether to protect the student-victim from their alleged abuser is ultimately in the hands of the DOE.

77. If the investigation substantiates an allegation of corporal punishment and/or verbal abuse, the school administration must take some form of disciplinary action against the perpetrator. CR A-420(VII)(A); CR A-421(VII)(A). Neither the Regulations nor the DOE's practices, however, mandate removing the perpetrator from contact with students—or even the victim—or taking any other protective action. Instead, disciplinary action following substantiation may consist of a fine, directing the perpetrator to read the Regulations, or training. The Regulations also do not require any action to prevent the incident from creating a hostile environment for the victim or other District 75 students.

78. In addition, although the Regulations require principals to inform the alleged victim's parents of whether the report of corporal punishment and/or verbal abuse was substantiated, CR A-420(VI)(D); CR A-421(VI)(D), the Regulations do not entitle parents to any other information during the pendency of the investigation or after it is completed. Given that many investigations span far beyond the timeframe outlined in the Regulations, parents may go months or even years without any meaningful information related to the alleged corporal punishment and/or verbal abuse of their child.

19

**B.     Systemic Investigative Failures**

79.     The DOE has displayed deliberate indifference and gross misjudgment by disregarding even these minimal obligations.

80.     As an initial matter, DOE employees routinely fail to report to OSI—either at all, or in a timely manner—allegations of corporal punishment and/or verbal abuse of District 75 students by DOE employees, despite their obligation to do so under the Regulations.

81.     The DOE often fails to provide parents (and guardians) with notice that a complaint has been filed.

82.     DOE investigators also routinely fail, as part of investigating corporal punishment and/or verbal abuse allegations, to collect evidence and interview relevant parties, instead interviewing school administrators such as principals and assistant principals, rather than the alleged abusers or the employees and students who have actually witnessed the alleged incidents.

83.     Further, the DOE fails to report the outcome of investigations to the parents (or guardians) of the victim, despite the fact that the Regulations require such notification.

84.     Finally, the DOE routinely fails to complete investigations in the time period provided for by the Regulations.

85.     The DOE's failure to comply with the Regulations has a disproportionate, negative impact on District 75 students, who are more likely to face such corporal punishment and/or verbal abuse, face barriers in reporting such abuse,[5] and are less likely to be believed if they attempt to report it, all because of their disabilities.

---

[5]     *See* Jonathan Young et al., *Briefing Paper, Bullying and Students with Disabilities*, Nat'l Council on Disability 6 (2011) (noting that the requirement of parental notification of harassment by schools "may be particularly important for students with communication-related disabilities whose families may not otherwise become aware of incidents"), https://files.eric.ed.gov/fulltext/ED528255.pdf.

**C.     Failure to Protect Students During and After Investigations**

86.     The DOE routinely fails to take appropriate steps to protect students (including the students about whom a complaint of corporal punishment and/or verbal abuse has been made) from employees accused of subjecting students with disabilities to corporal punishment and/or verbal abuse.

87.     The DOE routinely refuses to take adequate disciplinary measures against employees who are found to have subjected students to corporal punishment and/or verbal abuse.

**D.     Haphazard and Neglectful Data Reporting Systems**

88.     Additionally, the DOE's data reporting systems as they relate to allegations and investigations of corporal punishment and/or verbal abuse are ineffective to the point that they substantially depart from widely accepted professional standards and demonstrate a deliberate indifference to the risk of harm to District 75 students.  Because students with disabilities are more likely to be subject to such abuse, District 75 students are disproportionately denied access to the DOE's benefits and services, as well as a safe school environment free from abuse because of their disabilities.

**E.     Defendants' Notice of Systemic Investigative Failures**

89.     For years, the DOE has been, and is currently, on actual notice of the longstanding District 75-wide customs and practices challenged by Plaintiff in this lawsuit.  Nevertheless, the DOE has not taken action to appropriately respond.

90.     Through the pupil records of District 75 students, the DOE possesses detailed information concerning the students' disabilities and is therefore fully aware of how these students will likely react to incidents of corporal punishment and/or verbal abuse and if questioned by investigators.

91.　In 2015, the DOE was warned that OSI had common practices of failing to supervise investigators and investigations and insufficiently involving lawyers in the review of investigations, thereby risking prematurely closing investigations.[6]

92.　Additionally, parents (and guardians) of District 75 students have repeatedly brought the investigative failures summarized herein, and the particular, disparate effect of those failures on District 75 students, to the DOE's attention—to no avail.

93.　Parent Associations ("PAs") and Parent-Teacher Associations ("PTAs") exist for each DOE district school, including District 75 schools. A Presidents' Council is an organization of PA/PTA presidents (or designees) that represents the interests of parents and parent leader organizations. The DOE requires that each school district have a Presidents' Council. District 75's Presidents' Council is made up of the 65 presidents of District 75 school PAs and PTAs from across the City.

94.　Alarmed at the existence of the abuse alleged herein and at the stonewalling by the DOE which followed, parents of District 75 students formed a group known as "Advocacy and Defense of our Children."

**F.　Impact on District 75 Students**

95.　Due to their disabilities, District 75 students are more vulnerable to being subjected to corporal punishment and/or verbal abuse by DOE employees than nondisabled students in other school districts. DOE employees without appropriate training may interpret symptoms of these students' disabilities, such as spitting or tantrums, as provocations or find the students otherwise

---

[6]　*See* Letter from Mark G. Peters, Commissioner of the Department of Investigation, and Richard J. Condon, Special Commissioner of Investigation for the New York City School District, to Carmen Fariña, Chancellor, New York City Public Schools (Aug. 17, 2015), https://www1.nyc.gov/assets/doi/sci/reports/08-15-Liu-Report.pdf; Jim Dwyer, *Major Flaws Found in Inquiry that Led to Suspension of Public-School Therapist*, N.Y. Times (Aug. 17, 2015), https://www.nytimes.com/2015/08/18/nyregion/major-flaws-found-in-inquiry-that-led-to-suspension-of-public-school-therapist.html.

difficult to manage. Moreover, many District 75 students have difficulty reporting abuse due to their intellectual or language-related disabilities. District 75 students are also reluctant to report corporal punishment and/or verbal abuse by the DOE employees on whom they rely to assist them with intimate tasks such as eating and going to the bathroom. In short, DOE employees are in positions of power and authority over the students. Further, DOE employees, including investigators, routinely disregard reports of corporal punishment and/or verbal abuse of students with disabilities and instead wrongly attribute the students' injuries to self-harm—even when the students have no history of self-harm.

96. It is critical that investigations of corporal punishment and/or verbal abuse by DOE employees be conducted in a fair and timely manner. Where investigations drag on over months and years, memories fade, witnesses disappear, and evidence can be lost or misplaced. Importantly, there is no timeframe for OSI-conducted investigations at all. Although the Regulations mandate a timeframe for school-based investigations, such investigations are rarely completed on time.

97. A timely, satisfactory, and fair investigation benefits all parties: it clears the names of DOE employees who did nothing wrong; provides accountability for those employees who make mistakes; resolves uncertainty and provides closure for District 75 students and their parents (or guardians) where the student has alleged that they are the victim of corporal punishment and/or verbal abuse by DOE employees; and helps protect current and future District 75 students from abuse at the hands of DOE employees.

## CLASS ACTION ALLEGATIONS

A. **Proposed Plaintiff Class**

98. Plaintiff brings this action on behalf of himself and, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of the "Proposed Plaintiff Class":

All present and future students enrolled in a District 75 school, except those enrolled in a District 75 program solely for the purpose of receiving day treatment or home and hospital instruction, about whom a complaint is made to the New York City Department of Education that the student has been a victim of corporal punishment and/or verbal abuse as defined in Chancellor's Regulations A-420 and A-421.

**B.      Rule 23(a)**

99.      The Proposed Plaintiff Class is so numerous that joinder of all members is impracticable. According to the DOE, District 75 students total nearly 26,000 as of the 2024–2025 school year. Judicial economy weighs in favor of avoiding multiple actions challenging the same customs and practices. In addition, upon information and belief, many members of the Proposed Plaintiff Class are low-income persons and/or speak English with limited proficiency and therefore are likely to have great difficulty in pursuing their rights individually.

100.      The Proposed Plaintiff Class is readily ascertainable based on the definition, which sets forth objective means to determine whether someone is or is not a member of the class, including (i) enrollment in a District 75 school with enumerated exceptions and (ii) whether or not "a complaint is made to the New York City Department of Education that the student has been a victim of corporal punishment and/or verbal abuse as defined in Chancellor's Regulations A-420 and A-421."

101.      The claims of the Proposed Plaintiff Class depend on questions of law and/or fact common to each class, including, but not limited to:

      i.      Whether the DOE failed to enforce the Regulations by neglecting to promptly investigate incidents of corporal punishment and/or verbal abuse of District 75 students by DOE employees;

      ii.     Whether the Regulations are sufficient to ensure the adequate investigation of allegations of corporal punishment and/or verbal abuse of District 75 students;

      iii.    Whether there exists a policy, custom, or practice of failing to adequately capture reports of corporal punishment and/or verbal

abuse concerning District 75 students at the hands of DOE employees;

iv.    Whether the DOE failed to train, supervise, or discipline its employees who subject students to corporal punishment and/or verbal abuse in District 75 schools and/or its employees who fail to report and investigate such corporal punishment and/or verbal abuse;

v.    Whether the DOE failed to investigate and remedy known incidents of corporal punishment and/or verbal abuse of students in District 75 schools by DOE employees, despite repeatedly having been informed of these problems through several means, including through parent complaints and external complaints;

vi.    Whether the DOE's alleged deliberate indifference and gross misjudgment constitute discrimination against class members under the ADA, Section 504, and the NYCHRL;

vii.    Whether the DOE denied class members meaningful access to its services and benefits on the basis of their disabilities, in violation of the ADA, Section 504, and the NYCHRL; and

viii.    Whether declaratory and injunctive remedies are needed to ensure that students in District 75 schools are protected and that the DOE's harmful discriminatory conduct is halted.

102. Defendants are expected to raise common defenses to these claims, including denying that they were deliberately indifferent to deficiencies in investigations and denying that the DOE's policies, customs, and practices violate the law.

103. Plaintiff's claims are typical of those of the class. Plaintiff attends, and attended at all relevant times, a school in District 75. Any District 75 student who alleges corporal punishment and/or verbal abuse against a DOE employee is subject to CR A-420 and CR A-421. Plaintiff has alleged such abuse at the hands of a DOE employee, sought redress from the DOE, and has been subject to the DOE's discriminatory policies, practices, and customs regarding investigations of Plaintiff's allegations.

104. Plaintiff is capable of fairly and adequately protecting the interests of all class members herein because Plaintiff does not have any antagonistic interests thereto. Plaintiff has an

25

interest in vigorously pursuing the claims of the class. Further, Plaintiff is represented by counsel experienced in civil rights litigation, litigation on behalf of individuals with disabilities, complex litigation, and class actions.

**C.      Rule 23(b)(2) of the Federal Rules of Civil Procedure**

105.     This action is maintainable as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the DOE has acted or refused to act on grounds generally applicable to all Proposed Plaintiff Class members, thereby making class-wide declaratory and injunctive relief appropriate. Class treatment provides a fair and efficient method for the adjudication of the controversy affecting a large number of persons, joinder of whom is impracticable.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.***

106.     Plaintiff repeats and re-alleges the foregoing paragraphs as if the same were fully set forth at length herein.

107.     By virtue of his enrollment in District 75, Plaintiff has disabilities that substantially limit one or more major life activities, and therefore is an individual with disabilities within the meaning of the ADA. 42 U.S.C. § 12102(1).

108.     The ADA prohibits any "public entity" from "exclud[ing] from participation in" or "den[ying] the benefits of" the entity's "services, programs, or activities," or otherwise "subject[ing] to discrimination," any "qualified individual with a disability." *Id.* § 12132.

109.     The DOE was, at all times relevant to this action, and is currently a "public entity" within the meaning of the ADA. *Id.* § 12131(1).

26

110. By reason of the customs and conduct described herein, the DOE has discriminated against Plaintiff on the basis of his disabilities, in violation of the ADA. Defendants have failed to provide a safe learning environment for students with disabilities who attend District 75 schools and failed to protect them from abuse by DOE employees. The pervasive failure to properly investigate allegations of corporal punishment and/or verbal abuse of students with disabilities denies Plaintiff and the students of District 75 a safe school environment free from corporal punishment and/or verbal abuse, and discriminates against them on the basis of their disabilities in violation of the ADA. The DOE's failure to conduct timely and adequate investigations has a disparate impact on District 75 students.

111. Plaintiff is entitled to injunctive relief.

**SECOND CLAIM FOR RELIEF**

**Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 _et seq._**

112. Plaintiff repeats and re-alleges the foregoing paragraphs as if the same were fully set forth at length herein.

113. By virtue of his enrollment in District 75, Plaintiff is an individual with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(20)(B).

114. Section 504 provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." _Id._ § 794.

115. The DOE was, at all times relevant to this action, and is currently the recipient of federal financial assistance within the meaning of the Rehabilitation Act. _Id._ § 794(a).

116. By reason of the customs and conduct described herein, the DOE has discriminated against Plaintiff on the basis of his disabilities, in violation of Section 504. The pervasive failure

27

to properly investigate allegations of corporal punishment and/or verbal abuse of students with disabilities by DOE employees denies Plaintiff and the students of District 75 a safe school environment free from physical abuse and discriminates against them on the basis of his disabilities in violation of Section 504.

117. Plaintiff is entitled to injunctive relief.

### THIRD CLAIM FOR RELIEF

**Violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.***

118. Plaintiff repeats and re-alleges the foregoing paragraphs as if the same were fully set forth at length herein.

119. The NYCHRL prohibits any "provider of public accommodation" from refusing, withholding from, or denying "the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation" because of "any person's actual or perceived . . . disability." N.Y.C. Admin. Code § 8–107(4)(a).

120. The NYCHRL further creates liability for any provider of public accommodation who fails to "provide a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known." *Id.* § 8–107(15)(a).

121. The DOE was, at all times relevant to this action, and is currently a "provider of public accommodation" within the meaning of the NYCHRL. *Id.* § 8–102.

122. The pervasive failure by the DOE to properly investigate allegations of corporal punishment and/or verbal abuse of students with disabilities denies Plaintiff and the students of District 75 a safe school environment free from corporal punishment and/or verbal abuse, and discriminates against them on the basis of their disabilities. By reason of the policies, practices,

28

and customs described above, Defendants have discriminated against Plaintiff on the basis of his disabilities by denying Plaintiff the full and equal enjoyment, on equal terms and conditions, of the accommodations, advantages, services, facilities, or privileges provided by the DOE, including access to special education services, in violation of the NYCHRL. *Id.* § 8-107(4)(a)(l)(a).

123. Defendants have failed to provide reasonable accommodations to Plaintiff and the students of District 75 by failing to provide appropriate training on, investigation of, and response to reported corporal punishment and/or verbal abuse by DOE teachers and staff. By reason of the policies, practices, and customs described above, Defendants have failed to reasonably accommodate Plaintiff's disabilities in violation of the NYCHRL. N.Y.C. Admin. Code § 8-107(15)(a).

124. Plaintiff is entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a) Assume jurisdiction over this matter;

b) Certify this action as a class action;

c) Issue a declaratory judgment that the DOE is in violation of the ADA, Section 504 of the Rehabilitation Act, and the NYCHRL;

d) Issue a permanent injunction or judgment restraining the DOE from failing to comply with federal and state law and the Chancellor's Regulations with respect to members of the Proposed Plaintiff Class, including but not limited to an injunction that requires the Defendants to submit to Plaintiff and the Court for approval:

    i. Revisions to the DOE's current policies governing investigations into alleged corporal punishment and verbal abuse of District 75 students by DOE employees, ensuring the safety of students and sufficient compliance with federal, state, and local laws;

    ii. A comprehensive remedial plan to protect District 75 students from abuse by DOE employees and assure them a safe educational environment, mandating:

29

A. the timely reporting of alleged corporal punishment and/or verbal abuse;

B. the swift and thorough investigation and resolution of corporal punishment and/or verbal abuse allegations;

C. the prompt notification—of allegations of corporal punishment and/or verbal abuse, investigations, and resolutions—to the parents (or guardians) of a student about whom a complaint has been made to the DOE that the student has been a victim of corporal punishment and/or verbal abuse;

D. provision for parents (and guardians) of a meaningful, informed role in the investigation of alleged corporal punishment and/or verbal abuse and resolution process;

E. training of teachers, other staff, parents (and guardians), and students on corporal punishment and/or verbal abuse policies, and training of investigators and administrators on investigating complaints that a student has been a victim of corporal punishment and/or verbal abuse;

F. maintenance of records of each corporal punishment and/or verbal abuse allegation received, investigation conducted, and corrective action taken;

G. procedures for identifying and monitoring staff with confirmed histories of corporal punishment and/or verbal abuse, as well as procedures to ensure that individuals with such histories are not hired where they pose an ongoing risk of causing harm;

H. procedures for communicating with other government agencies regarding allegations of corporal punishment and/or verbal abuse; and

I. a comprehensive annual compliance report that will be provided to all District 75 parents (and guardians) and available to the public;

e) Appoint a monitor to oversee the development and implementation of the remedial plan and to determine that the plan is sufficient and appropriately implemented;

f) Retain jurisdiction in this case until the unlawful conditions, practices, policies, acts, and omissions complained of herein no longer exist and this Court is satisfied that they will not recur;

30

g)    Award Plaintiff's counsel reasonable attorneys' fees and costs; and

h)    Grant such other and further relief as may be appropriate.

Dated: July 30, 2026

New York, New York

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: */s/ Gregory F. Laufer*
Gregory F. Laufer
Lissette Duran
Eric E. Stern
Edward S. Friedman
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
glaufer@paulweiss.com
lduran@paulweiss.com
eestern@paulweiss.com
efriedman@paulweiss.com

*Counsel for Plaintiff*

NEW YORK LAWYERS FOR THE
PUBLIC INTEREST

Roberta Mueller
William Juhn
151 West 30th Street, 11th Floor
New York, NY 10001-4017
(212) 244-4664
rmueller@nylpi.org
wjuhn@nylpi.org

*Counsel for Plaintiff*